**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**BID PROTEST**

| | |
|---|---|
| **WOLVERINE WORLD WIDE, INC.,** | **REDACTED COPY** |
| **Plaintiff,** | |
| **v.** | No. 07-274C (Hewitt, E.) |
| **UNITED STATES OF AMERICA,** | |
| **Defendant.** | |

**PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION**

Plaintiff, Wolverine World Wide, Inc. ("Wolverine"), by its undersigned attorneys, hereby moves the Court pursuant to RCFC 65 for a temporary restraining order and/or for a preliminary injunction enjoining the defendant from making award of Contract Line Items 0001, 0002, 0006, 0007, and 0008 under Solicitation SP0100-06-R-0007, issued by the Defense Supply Center Philadelphia, pending the Court's decision on the merits of Plaintiff's Complaint. In support of this Motion, Wolverine relies on its Complaint, the attached Memorandum of Points and Authorities, the Declarations of Ron Woznick and Brenda Vugteveen, and Exhibits 1-12, contained in the separately bound Appendix.

**REDACTED COPY**

WHEREFORE, Plaintiff requests that its Motion be granted.

Respectfully submitted,

s/ Philip A. Nacke
Philip A. Nacke
FOLEY & LARDNER LLP
3000 K Street, N.W., Suite 500
Washington, D.C. 20007-5143
Telephone 202.295.4086
Facsimile 202.672.5399

*Counsel of Record for Plaintiff Wolverine World Wide, Inc.*

OF COUNSEL:
David T. Ralston, Jr.
Steven C. Lambert
FOLEY & LARDNER LLP
3000 K Street, N.W., Suite 500
Washington, D.C. 20007-5143
Telephone 202.672.5300
Facsimile 202.672.5399

Dated May 2, 2007

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**BID PROTEST**

| | |
|---|---|
| **WOLVERINE WORLD WIDE, INC.,** | **REDACTED COPY** |
| **Plaintiff,** | No. 07-274C |
| **v.** | (Hewitt, E.) |
| **UNITED STATES OF AMERICA,** | |
| **Defendant.** | |

# MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION

OF COUNSEL:
David T. Ralston, Jr.
Steven C. Lambert
FOLEY & LARDNER LLP
3000 K Street, N.W., Suite 500
Washington, D.C. 20007-5143
Telephone 202.672.5300
Facsimile 202.672.5399

Philip A. Nacke
FOLEY & LARDNER LLP
3000 K Street, N.W., Suite 500
Washington, D.C. 20007-5143
Telephone 202.295.4086
Facsimile 202.672.5399

*Counsel of Record for Plaintiff Wolverine World Wide, Inc.*

Dated May 2, 2007

**REDACTED COPY**

## TABLE OF CONTENTS


Page

INTRODUCTION .......... 1

FACTS .......... 2

The DSCP Solicitation .......... 2

Wolverine's Proposal .......... 7

DSCP's Notification of Elimination from the Competitive Range And Subsequent Debriefing of Wolverine .......... 8

STANDARD OF REVIEW .......... 10

ARGUMENT .......... 10

Wolverine Is Likely To Succeed On The Merits .......... 11

DSCP Ignored the Evaluation Procedures Set Forth in the Solicitation when Making the Competitive Range Determination .......... 12

DSCP Ignored the Subfactor Weighting Terms of the Solicitation in Evaluating Wolverine's PDMs, Leading to an Incorrect PDM Factor Evaluation, which in Turn Led to a Flawed Overall Rating .......... 14

DSCP Misevaluated Certain PDM and Experience/Past Performance Subfactors, Leading to Incorrect Factor Evaluations for PDMs and Experience/Past Performance, which in Turn Led to a Flawed Overall Rating .......... 16

Absent Relief, Wolverine Will Suffer Irreparable Harm .......... 20

The Balance Of Hardship Tips In Wolverine's Favor .......... 22

Granting Wolverine The Relief Requested Will Serve The Public Interest .......... 23

Declaration of Ron Woznick .......... (separate document)

Declaration of Brenda Vugteveen .......... (separate document)

Appendix .......... (separate document)

**REDACTED COPY**

List of Exhibits:


| | | |
|---|---|---|
| Exhibit 1 | Solicitation SP0100-06-R-0007, amendment/modification 0002 (6/21/2006) | 1-91 |
| Exhibit 2 | Solicitation SP0100-06-R-0007, amendment/modification 0003 (7/18/2006) | 92-93 |
| Exhibit 3 | Solicitation SP0100-06-R-0007, amendment/modification 0004 (7/24/2006) | 94-95 |
| Exhibit 4 | Purchase Description 06-10, Boot, Combat, Hot Weather, Army (6/19/2006) | 96-127 |
| Exhibit 5 | Purchase Description 06-33, Boot, Combat, Hot Weather, Army, Black (6/19/2006) | 128-159 |
| Exhibit 6 | Wolverine Technical Proposal, Product Demonstration Models, Solicitation SP0100-06-R-0007 (8/2/2006) | 160-62 |
| Exhibit 7 | Wolverine Technical Proposal, Past Performance/Experience, Solicitation SP0100-06-R-0007 (8/2/2006) | 163-241 |
| Exhibit 8 | Letter from Thomas Darcy to Ron Woznick (2/5/2007) | 242 |
| Exhibit 9 | Wolverine Technical Proposal, Past Performance/Experience, Solicitation SP0100-06-R-0044 (8/31/2006) | 243-320 |
| Exhibit 10 | Excerpts of Solicitation SP0100-06-R-0044 | 321-25 |
| Exhibit 11 | E-mail authored by Brenda Vugteveen summarizing debriefing results with respect to SP0100-06-R-0007 (2/8/2007) | 326-27 |
| Exhibit 12 | E-mail authored by Brenda Vugteveen summarizing debriefing results with respect to SP0100-06-R-0044 (3/1/2007) | 328 |

**REDACTED COPY**

## TABLE OF AUTHORITIES

Page

**FEDERAL STATUTES**

28 U.S.C. § 1491(b) ... 10, 22

28 U.S.C. § 1491(b)(3) ... 22

28 U.S.C. § 1491(b)(4) ... 10

**REGULATIONS**

48 C.F.R. § 1.602(b) ... 11

48 C.F.R. § 15.305(a) ... 11

48 C.F.R. § 15.306(c)(1) ... 13

48 C.F.R. § 15.306(c)(2) ... 13

FAR Clause 52.215-1(f)(4) ... 13, 14

**FEDERAL CASES**

*Al Ghanim Combined Group Co. v. United States*,
56 Fed. Cl. 502 (2003) ... 23

*Alfa Laval Separation, Inc. v. United States*,
175 F.3d 1365 (Fed. Cir. 1999) ... 21

*Banknote Corp. of America v. United States*,
365 F.3d 1345 (Fed. Cir. 2004) ... 10

*Bean Stuyvesant, L.L.C. v. United States*,
48 Fed. Cl. 303 (2000) ... 13, 20

*Birch & Davis International, Inc. v. Christopher*,
4 F.3d 970 (Fed. Cir. 1993) ... 13

*Cardinal Maintenance Service, Inc. v. United States*,
63 Fed. Cl. 98 (2004) ... 21-23

*Chapman Law Firm v. United States*,
63 Fed. Cl. 25 (2004) ... 10

*CSE Const. Co., Inc. v. United States*,
58 Fed. Cl. 230 (2003) ... 11



WASH_1867094.1

**REDACTED COPY**

*Cubic Defense Systems, Inc. v. United States*,
45 Fed. Cl. 450 (1999) .......... 14, 16, 21

*CW Government Travel v. United States*,
61 Fed. Cl. 559 (2004) .......... 23

*Federal Management Systems, Inc. v. United States*,
61 Fed. Cl. 364 (2004) .......... 15

*Filtration Development Co., LLC v. United States*,
60 Fed. Cl. 371 (2004) .......... 23

*FMC Corp. v. United States*,
3 F.3d 424 (Fed. Cir. 1993) .......... 11

*Hunt Building Co. v. United States*,
61 Fed. Cl. 243 (2004) .......... 11, 21

*Information Sciences Corp. v. United States*,
73 Fed. Cl. 70 (2006) .......... 11, 15, 21

*Isratex, Inc. v. United States*,
25 Cl. Ct. 223 (1992) .......... 20

*Keeton Corrections, Inc. v. United States*,
59 Fed. Cl. 753 (2004) .......... 15, 23

*Labat-Anderson Inc. v. United States*,
50 Fed. Cl. 99 (2001) .......... 22

*Myers Investigative & Security Services, Inc. v. United States*,
275 F.3d 1366 (Fed. Cir. 2002) .......... 21

*Norfolk Dredging Co. v. United States*,
58 Fed. Cl. 741 (2003) .......... 22

*NVT Technologies, Inc. v. United States*,
370 F.3d 1153 (Fed. Cir. 2004) .......... 10

*OTI America, Inc. v. United States*,
68 Fed. Cl. 646 (2005) .......... 23

*Overstreet Elec. Co. v. United States*,
47 Fed. Cl. 728 (2000) .......... 22

*PGBA, LLC v. United States*,
57 Fed. Cl. 655 (2003) .......... 21, 23



WASH_1867094.1

**REDACTED COPY**

*SAI Industries v. United States*,
60 Fed. Cl. 731 (2004) .......... 22

*Seaborn Health Care v. United States*,
55 Fed. Cl. 520 (2003) .......... 11

*Seattle Security Services, Inc. v. United States*,
45 Fed. Cl. 560 (2000) .......... 22

*United Int'l Investigative Servs., v. United States*,
41 Fed. Cl. 312 (1998) .......... 21, 23

*United Payors & United Providers Health Servs., Inc. v. United States*,
55 Fed Cl. 323 (2003) .......... 21

*Vantage Associates, Inc. v. United States*,
59 Fed. Cl. 1 (2003) .......... 11

*W & D Ships Deck Works, Inc. v. United States*,
39 Fed. Cl. 638 (1997) .......... 13

**GAO DECISIONS**

*Mas-Hamilton Group, Inc.*,
B-249049, Oct. 20, 1992,
1992 WL 328756, 72 Comp. Gen. 6, 92-2 CPD ¶ 259 .......... 23

*Master Security, Inc.*,
B-274990, Jan. 14, 1997,
1997 WL 11254, 97-1 CPD ¶ 21 .......... 23

*Unified Industries, Inc.*,
B-241010, Dec. 19, 1990,
1990 WL 293799, 70 Comp. Gen. 142, 91-1 CPD ¶ 11 .......... 23

*Wilson Beret Co.*, B-289685 .......... 14

**REDACTED COPY**

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**BID PROTEST**

| | |
|---|---|
| **WOLVERINE WORLD WIDE, INC.,** | |
| **Plaintiff,** | **FILED UNDER SEAL** |
| **v.** | No. 07-274C<br>(Hewitt, E.) |
| **UNITED STATES OF AMERICA,** | Protected Material to be Disclosed Only In Accordance With Court of Federal Claims Protective Order |
| **Defendant.** | |

**MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF PLAINTIFF'S MOTION FOR**
**TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION**

Plaintiff Wolverine World Wide, Inc. ("Wolverine") has moved for a temporary restraining order and/or a preliminary injunction enjoining the defendant from making award of Contract Line Items ("CLIN") 0001, 0002, 0006, 0007, and 0008 under Solicitation SP0100-06-R-0007, issued by the Defense Supply Center Philadelphia ("DSCP"), pending this Court's consideration of and decision on Wolverine's protest challenging its exclusion from the competitive range in the above-referenced procurement for Army Hot Weather Combat Boots. For the reasons set forth hereinafter, entry of a temporary restraining order and/or a preliminary injunction is warranted.

## INTRODUCTION

In this action, Wolverine seeks a declaratory judgment that, in conducting the subject procurement, DSCP acted arbitrarily and capriciously, abused its discretion, and otherwise acted contrary to applicable federal law by eliminating Wolverine from the competitive range. To remedy said misconduct and errors, Wolverine seeks injunctive relief ordering, *inter alia*, that

REDACTED COPY

DSCP reinstate Wolverine's proposal in the competitive range, that DSCP conduct discussions with Wolverine, that DSCP allow Wolverine to submit final proposal revisions, and, after DSCP has evaluated those proposals in the competitive range, including Wolverine's, that only then may DSCP proceed to award of CLINs 0001, 0002, 0006, 0007, and 0008 of the subject procurement.

## FACTS

Wolverine is a long-established manufacturer of footwear, as it or its corporate predecessors have been manufacturing footwear since 1883. Wolverine is today one of the largest producers of footwear in the United States and one of the largest boot manufacturing companies (based upon unit shipments) in the world. Wolverine, through its several operating divisions, holds numerous contracts to supply federal agencies with footwear. Among Wolverine's better known divisions and products are Bates, Hush Puppies, Sebago, and Patagonia Footwear.

### The DSCP Solicitation

By Solicitation SP0100-06-R-0007, issued May 18, 2006, DSCP sought proposals for the award of five contracts for Army Hot Weather Combat Boots. Four amendments followed. Amendment No. 0002, issued June 21, 2006, deleted the initial solicitation and replaced it with the terms of Amendment No. 0002. No. 2. Declaration of Ron Woznick ("Woznick Decl.") ¶ 2 & Ex. 1. Amendment No. 0003, issued July 18, 2006, among other things, extended the date for submission of proposals to August 2, 2006. Woznick Decl. ¶ 3 & Ex. 2, at 93.

The Solicitation establishes eight CLINs. Each CLIN is for a base year and four option years. CLIN 0001 is unrestricted (i.e., open to all offerors irrespective of size) and encompasses both "Army Combat Boot, Hot Weather" (hereinafter "ACB Tan") and "Boot, Hot Weather Black (hereinafter "ACB Black"). CLIN 0001 maximum quantities, base year plus all option

**REDACTED COPY**

years, for ACB Tan and ACB Black combined are 2,104,080 pairs. CLIN 0002 is unrestricted and deals solely with ACB Tan; maximum quantities, base year plus all option years, are 1,571,989 pairs. CLIN 0003 is set aside for small business. It deals solely with ACB Tan and states maximum quantities, base year plus all option years, of 1,629,957 pairs. CLIN 0004 also is set aside for small business. It deals solely with ACB Tan and states maximum quantities, base year plus all option years, of 1,140,970 pairs. CLIN 0005 is reserved for certified HUBZone small businesses. It deals solely with ACB Tan and states maximum quantities, base year plus all option years, of 488,987 pairs. CLIN 0006 represents the requirements of CLIN 0003 and is to be awarded only if there is no award under CLIN 0003. CLIN 0007 represents the requirements of CLIN 0004 and is to be awarded only if there is no award under CLIN 0004. CLIN 0008 represents the requirements of CLIN 0005 and is to be awarded only if there is no award under CLIN 0005. Woznick Decl., Ex. 1, at 6-13.

Offerors were instructed to divide their proposal into two parts – a technical proposal and a business proposal (price). *Id.* at 58. DSCP identified five evaluation factors for the technical proposals:

1. Product Demonstration Models ("PDMs");
2. Past Performance/Experience;
3. Surge and Sustainment Capability;
4. Socioeconomic Support; and
5. Javits-Wagner-O'Day ("JWOD") Act Entity Proposal.

**REDACTED COPY**

*See generally id.* at 59-65. These five evaluation factors as listed above are in descending order of importance.[1] *Id.* at 66. DSCP advised that it would award contracts to "responsible offeror[s] whose offer[s] conforming to the solicitation will be most advantageous to the Government, price and other factors considered." *Id.*; *see id.* at 24 ("offerors may not receive more than one award/line item"). The Solicitation further advised that "[t]echnical and past performance, when combined are [s]ignificantly more important than cost or price" and that "[a]s technical and past performance factors become more equal, the evaluated cost or price becomes more important." *Id.* at 66.

***Product Demonstration Models.*** Further detail regarding the first evaluation factor is provided at pages 59-60 and 66-67 of the Solicitation. An offeror was required to submit a specified number of samples, PDMs, as part of its proposal. *Id.* at 59. The PDMs were to be evaluated on the basis of four subfactors, all of equal importance: (i) manufacturing operations; (ii) visual requirements; (iii) dimensional requirements; and (iv) testing requirements.[2] *Id.* at 66. Offerors were warned that "[a]n 'UNACCEPTABLE' rating in Subfactor 1 OR 2 will be cause for an Overall Unacceptable rating of the PDM." *Id.* at 67 (emphases in original).

***Past Performance/Experience.*** Further detail regarding the second evaluation factor is provided at pages 61, 66, and 67-68 of the Solicitation. This factor is broken into three subfactors: (i) experience; (ii) quality of items/delivery performance; and (iii) compliance with contractual socioeconomic subcontracting goals. *Id.* at 66. The first two subfactors are equally

---

[1] Evaluation factors four and five are not applicable with respect to CLINs 0003, 0004, and 0005.

[2] The first, second, and third subfactors were to be evaluated for conformance with the specification/commercial item description. Woznick Decl., Ex. 1, at 67. *See generally* Woznick Decl., Exs. 4 (Purchase Description for ACB Tan) & 5 (Purchase Description for ACB Black). The fourth subfactor consisted of enumerated tests. Woznick Decl., Ex. 1, at 67.

important and more important than the third subfactor. *Id.* In general, an offeror was to describe the extent of its experience producing the same or similar items for a commercial or governmental entity within the two years preceding the solicitation closing date and provide detailed information on each relevant contract. *Id.* at 61. DSCP would assess such information as an indicator of successful contract performance.[3] *Id.* at 67.

***Surge and Sustainment Capability.*** This factor is described at pages 62 and 68 of the Solicitation. Briefly put, DSCP required an offeror to demonstrate an ability to augment its peacetime monthly production rate by at least 25% and to maintain said level of increased production. *Id.* at 62.

***Socioeconomic Support.*** This factor is described in further detail at pages 62-64 and 68 of the Solicitation. A large business offeror was to provide a description of the efforts it would make to assure that small businesses of various categories will have to compete for and obtain subcontracts under any contract awarded under the instant Solicitation; specify what proportion (in terms of dollars) of its proposal it would contract to small business; and specify the type of performance data it would collect to document its success. *Id.* at 62-63.

***JWOD Act Entity Proposal.*** This factor is described in further detail at pages 64-65 and 68-69 of the Solicitation. A large business offeror was to provide a description of efforts it would make to assure that JWOD qualified nonprofit agencies will have to compete for subcontracts under any contract awarded under the instant Solicitation. *Id.* at 64.

[3] Offerors were advised further that "[t]he currency and relevance of the information, source of the information, context of the data, volume of business and general trends in performance will be considered. Offerors may be given an opportunity to address especially unfavorable reports of past performance and the offeror's response or lack thereof will be taken into consideration." Woznick Decl., Ex. 1, at 68.

**REDACTED COPY**

Scoring of proposals was to proceed on several bases. Each of the first three technical evaluation factors (PDMs, past performance/experience, and surge and sustainment capability), and their respective subfactors, were to be adjudged utilizing an adjectival rating system. Five possible results are described – exceptional, very good, satisfactory, marginal, and unsatisfactory. *Id.* at 70-71. An overall rating of these three factors combined is also to be given using the same adjectival ranks. *Id.* A proposal's scoring under the remaining two technical evaluation factors is to be on a comparative basis among all offerors. *Id.* at 72. Then an overall comparative assessment is to be made taking into account all technical evaluation factors and price. *Id.*

Further detail regarding the evaluation process is given under the heading "Additional Source Selection Evaluation Procedures." *Id.* at 73. All timely proposals are to undergo a technical and a business evaluation. With respect to the technical evaluation, DSCP specifies that:

> Proposals so technically deficient as to make them technically unacceptable will be rejected as unacceptable, regardless of the cost or price offered. No discussions will be held with rejected offerors, nor will any rejected offeror be given an opportunity to revise his offer to correct those deficiencies in order to become satisfactory after date and time set for receipt of initial offers.

*Id.* As for the business evaluation, each proposal is to be evaluated for completeness against the pricing requirements of the Solicitation. Evaluation of the actual cost or pricing data submitted can occur either at the initial proposal stage or during discussions. *Id.* Following these evaluations, and based thereon, the contracting officer is to make a competitive range determination that will be submitted to the Source Selection Authority ("SSA") for approval. Thereafter, written and/or oral discussions are to be conducted with all offerors in the competitive range. Final proposal revisions then are to undergo further technical and business

**REDACTED COPY**

evaluations. These evaluations are to be furnished to the contracting officer who is to prepare a written source evaluation report and present the analysis to the SSA. Based on this report and analysis, the SSA is to decide which offerors are selected for award.[4] *Id.*

**Wolverine's Proposal**

Wolverine timely submitted its proposal before the closing date for the Solicitation. Woznick Decl. ¶ 6. Pricing data was provided for CLINs 0001, 0002, 0006, 0007, and 0008. *Id.* PDMs of both the ACB Tan (6 pair) and the ACB Black (5 pair) were provided. Woznick Decl., Ex. 6, at 162. Extensive past performance/experience information was supplied, including [redacted]. Woznick Decl., Ex. 7, 171-81.

[redacted]

[4] Successful offerors' business proposals are to be evaluated to determine cost/price realism. Woznick Decl., Ex. 1, at 73.

REDACTED COPY

[redacted]

**DSCP's Notification of Elimination from the Competitive Range And Subsequent Debriefing of Wolverine**

By letter of February 5, 2007, Contracting Officer Thomas Darcy advised Ron Woznick, Vice President and General Manager of Wolverine's Bates Uniform Footwear Division, that Wolverine's "proposal for Line Items 0001, 0002, 0006-0008 . . . were determined to no longer be within the competitive range [redacted] Therefore, your proposals as well as any further revisions will not be considered." Woznick Decl. ¶ 7 & Ex. 8. Wolverine requested a pre-award debriefing, which was held via telephone on February 7, 2007. No written materials were distributed. The debriefing was conducted by Mr. Darcy of DSCP. In attendance for Wolverine were Mr. Woznick, Brenda Vugteveen (Contract Administrator), and Ken Raymond (Contract Administrator).

The substance and results of the debriefing are set forth in Exhibit 11 accompanying the Declaration of Brenda Vugteveen ("Vugteveen Decl."). Those results, summarized by evaluation factors (and subfactors where relevant), are:

**REDACTED COPY**

[redacted]

**REDACTED COPY**

[redacted] Mr. Darcy summarized the rationale for DSCP's action as [redacted] Vugteveen Decl., Ex. 11, at 327.

**STANDARD OF REVIEW**

This Court has jurisdiction over Wolverine's pre-award bid protest under 28 U.S.C. § 1491(b) and this Court's review of DSCP's actions is to be made in accordance with "the standards set forth in section 706 of title 5 [Administrative Procedure Act]." 28 U.S.C. § 1491(b)(4). Under that standard, this Court will set aside agency action that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. *See, e.g., NVT Technologies, Inc. v. United States*, 370 F.3d 1153, 1159 (Fed. Cir. 2004); *Banknote Corp. of America v. United States*, 365 F.3d 1345, 1351 (Fed. Cir. 2004); *Chapman Law Firm v. United States*, 63 Fed. Cl. 25, 29 (2004) (citing *NVT, supra*).

**ARGUMENT**

In determining whether to grant preliminary injunctive relief in a procurement matter such as this, the Court will consider (i) the likelihood of the protester's success on the merits; (ii) whether the protester will suffer irreparable injury if the injunctive relief is not granted; (iii) whether the harm that the moving party will suffer if injunctive relief is not granted outweighs the harm that the government or third parties will suffer if such relief is granted; and

**REDACTED COPY**

(iv) whether granting injunctive relief will serve the public interest. *See FMC Corp. v. United States*, 3 F.3d 424, 427 (Fed. Cir. 1993); *CSE Const. Co., Inc. v. United States,* 58 Fed. Cl. 230, 261 (2003); *Seaborn Health Care v. United States*, 55 Fed. Cl. 520, 523-24 (2003). No one factor is dispositive and the "weakness of the showing regarding one factor may be overborne by the strength of the others." *FMC Corp.*, 3 F.3d at 427; *CSE Const.*, 58 Fed. Cl. at 261-62. As demonstrated hereinafter, Wolverine meets the requirements for granting injunctive relief.

**WOLVERINE IS LIKELY TO SUCCEED ON THE MERITS**

The Federal Acquisition Regulation ("FAR") imposes on contracting officers the responsibility to "[e]nsure that contractors receive impartial, fair, and equitable treatment" throughout the procurement process. 48 C.F.R. § 1.602(b). Further, notwithstanding the explicit statutory basis for this Court's bid protest jurisdiction, this Court "still recognize[s] that the issuance of a competitive solicitation which generates responsive offers gives rise to an implied contract of fair dealing." *Hunt Building Co. v. United States*, 61 Fed. Cl. 243, 273 (2004). An agency is to evaluate proposals "solely on the factors and subfactors specified in the solicitation." 48 C.F.R. § 15.305(a); *see Vantage Associates, Inc. v. United States*, 59 Fed. Cl. 1 (2003). The agency is not at liberty to ignore evaluation factors or subfactors that are set forth in a solicitation when making a competitive range determination, nor may the agency utilize evaluation factors not identified in the solicitation. *Information Sciences Corp. v. United States*, 73 Fed. Cl. 70, 115 (2006). Yet that is precisely what has occurred with respect to the evaluation of Wolverine's proposal.

While the full extent of the errors committed by DSCP no doubt will have to await production of the Administrative Record, it nonetheless is possible, based on the information at hand, to identify at least three categories of significant erroneous agency action, each of which materially prejudiced Wolverine. These actions were arbitrary, unreasonable, and inconsistent

REDACTED COPY

with the Solicitation and applicable regulations. Had the evaluation and competitive range determination been conducted properly, Wolverine would not have been eliminated from the competitive range.

**DSCP Ignored the Evaluation Procedures Set Forth in the Solicitation when Making the Competitive Range Determination.** Assuming for purposes of argument that DSCP's overall scoring of Wolverine's technical proposal [redacted][5] was reasonable and consistent with the stated evaluation factors and subfactors, DSCP nonetheless had no grounds to eliminate Wolverine from the competitive range. The Solicitation's "Source Selection Evaluation Procedures" advise offerors that all timely proposals will undergo a technical evaluation. Woznick Decl., Ex. 1, at 73 (subpart (a)). The Solicitation goes on to state:

> Each technical proposal and/or model will be evaluated against the technical factors specified in FAR provision 52.212-2. Proposals so technically deficient as to make them technically unacceptable will be rejected as unacceptable, regardless of the cost or price offered. No discussions will be held with rejected offerors, nor will any rejected offeror be given an opportunity to revise his offer to correct those deficiencies *in order to become satisfactory* after date and time set for receipt of initial offers.

*Id.* (subpart (b)(1)) (emphasis added). Following the technical evaluations, the contracting officer is to make a competitive range determination based on the evaluations and submit it to the SSA for approval. *Id.* (subpart (a)).

The clear message of the above-quoted Solicitation language, when read in conjunction with the notice that a competitive range will be determined, is that a proposal [redacted] will be in the competitive range. No discussions will be held with nor will

---

5 [redacted]



WASH_1867094.1

**REDACTED COPY**

opportunities to submit revised proposals be given to an offeror not found satisfactory in the technical evaluation. It follows directly that discussions will be held with and opportunities to submit revised proposals will be extended to those offerors [redacted] in the technical evaluation.

Wolverine recognizes that, for purposes of efficiency, a competitive range may be reduced to exclude otherwise highly rated proposals. *See* 48 C.F.R. § 15.306(c)(1). However, in order to do so, the agency must advise offerors in advance, in the solicitation, of that prospect by inclusion of FAR clause 52.215-1(f)(4). *See* 48 C.F.R. § 15.306(c)(2). FAR clause 52.215-1(f)(4) is **not** included in the Solicitation at issue here. *See generally* Woznick Decl., Ex. 1. Consequently, DSCP was not at liberty to eliminate Wolverine from the competitive range based on efficiency once its proposal [redacted]. To eliminate Wolverine was unreasonable, and, needless to say, highly prejudicial, for it has deprived Wolverine of the opportunities to engage in discussions with DSCP and to submit final proposal revisions. *Compare Birch & Davis International, Inc. v. Christopher*, 4 F.3d 970 (Fed. Cir. 1993).

This is not an instance of exclusion from the competitive range predicated on a proposal being found technically unacceptable or technically deficient. *See, e.g., Bean Stuyvesant, L.L.C. v. United States*, 48 Fed. Cl. 303, 340 (2000); *W & D Ships Deck Works, Inc. v. United States*, 39 Fed. Cl. 638, 643 (1997). [redacted] That fact when considered along with [redacted][6] reveals the wholly arbitrary nature of DSCP's exclusion of Wolverine from the competitive range. As stated in *Cubic*

[6] *See* Woznick Decl., Ex. 7, at 183, 186 [redacted]



WASH_1867094.1

**REDACTED COPY**

*Defense Systems, Inc. v. United States*, 45 Fed. Cl. 450, 460-61 (1999), "[i]t goes against principles of government contracting to exclude prematurely from competition an offeror whose proposal has a reasonable chance of being selected. Federal acquisition policy favors inclusion of such a bidder within the competitive range in the early stages of a procurement." Where the agency has not included FAR clause 52.215-1(f)(4), this policy applies in full force.

**DSCP Ignored the Subfactor Weighting Terms of the Solicitation in Evaluating Wolverine's PDMs, Leading to an Incorrect PDM Factor Evaluation, which in Turn Led to a Flawed Overall Rating.**[7] The Solicitation clearly provides that the four PDM subfactors (manufacturing operations; visual requirements; dimensional requirements; and testing requirements) are to be weighted equally. Woznick Decl., Ex. 1, at 66. Wolverine's proposal encompassed both the ACB Tan and the ACB Black; hence, each received its own PDM evaluation.

For the ACB Tan, Wolverine's subfactor ratings were [redacted] Vugteveen Decl., Ex. 11, at 326. Notwithstanding the potential imprecision of averaging adjectival assessments,[8] it is beyond cavil here that those four subfactor ratings when equally weighted and combined must yield [redacted] *See Wilson Beret Co.*, B-289685, Apr. 9, 2002, 2002 WL 31742917 at *6, 2002 CPD ¶ 206 (Where four subfactors are of equal weight and offeror had acceptable ratings for three of the four subfactors

---

[7] For purposes of the following discussion, Wolverine assumes for purposes of argument that the PDM subfactor scores assigned by DSCP are reasonable and consistent with the terms of the Solicitation and the Product Descriptions.

[8] [redacted] Woznick Decl., Ex. 1, at 70-71. There are no intermediate positions between them. Moreover, the Solicitation does not disclose an intent to utilize "+s" or "-s" in conjunction with the adjectival ratings.

**REDACTED COPY**

and a marginally acceptable rating for the fourth subfactor, "it is reasonable to assume that [the offeror's] proposal may have been rated overall acceptable under the . . . factor.").[9] Yet, DSCP accorded Wolverine's ACB Tan an overall PDM score [redacted] DSCP was not at liberty to disregard [redacted] *See Information Sciences Corp. v. United States*, 73 Fed. Cl. 70, 115 (2006). DSCP's overall PDM score [redacted] is patently unreasonable and arbitrary, given the terms of the Solicitation which advised offerors that each PDM subfactor was of equal weight, as an overall PDM [redacted] rating cannot conceivably result from an equal weighting of [redacted] subfactor ratings. At a minimum, Wolverine was entitled to [redacted] PDM score for the ACB Tan.

For the ACB Black, Wolverine's subfactor ratings were [redacted] Vugteveen Decl., Ex. 11, at 326. DSCP accorded Wolverine's ACB Black an overall PDM score [redacted] *Id.* Combining a corrected ACB Tan score [redacted] with the ACB Black score [redacted] Wolverine should have been ranked [redacted] for the PDM factor.

Wolverine's remaining technical scores were [redacted] for "Experience/Past Performance," and [redacted] for "Surge and Sustainment Capability," and it was [redacted] among all offerors for "Socioeconomic Support" and for "JWOD Act Entity Proposal."

[9] GAO decisions, while not binding on this Court, are nonetheless accorded deference in view of that body's special expertise. *Keeton Corrections, Inc. v. United States*, 59 Fed. Cl. 753, 758 n.5 (2004) and decisions cited thereat. *See also Federal Management Systems, Inc. v. United States*, 61 Fed. Cl. 364, 367 (2004) (GAO decisions persuasive albeit non-binding authority).

REDACTED COPY

Vugteveen Decl., Ex. 11, at 327. On that basis, Wolverine clearly was entitled to an overall rating [redacted] found by DSCP. That being the case, there is no reasonable basis to support elimination of Wolverine from the competitive range. *See Cubic Defense Systems, Inc. v. United States*, 45 Fed. Cl. 450, 460-61 (1999).

**DSCP Misevaluated Certain PDM and Experience/Past Performance Subfactors, Leading to Incorrect Factor Evaluations for PDMs and Experience/Past Performance, which in Turn Led to a Flawed Overall Rating.** At issue here are certain purported deficiencies in Wolverine's PDMs, identified during the debriefing, which went to downgrade the score assessed by DSCP for the "manufacturing operations" subfactor of the PDM factor, and DSCP's scoring of the "experience" subfactor and the "delivery performance" component of the "quality of items/delivery performance" subfactor of the Experience/Past Performance factor.

In the debriefing, DSCP advised that [redacted][10] Vugteveen Decl., Ex. 11, at 326. On information and belief, Wolverine contends that [redacted].[11] [redacted]

---

[10] With respect to the ACB Tan, the debriefing advised that [redacted] Vugteveen Decl., Ex. 11, at 326.

[11] [redacted] Vugteveen Decl. ¶ 7.

REDACTED COPY

[redacted][13]

[redacted]

---

[12] [redacted] Vugteveen Decl. ¶ 7.

[13] Following the debriefing, Wolverine has on two occasions requested return of its PDMs. Vugteveen Decl. ¶ ¶ 4 & 5. In each instance DSCP has declined to return the boots until after contract award. *Id.*

**REDACTED COPY**

[redacted]

Following submission of its proposal under the instant Solicitation, Wolverine responded to another DSCP solicitation (SP0100-06-R-0044) for military footwear. That proposal, for Navy safety flight deck boots, was submitted November 1, 2006. Woznick Decl. ¶ 8. [redacted] Moreover, DSCP's stated evaluation scheme for the "experience/past performance" factor under solicitation SP0100-06-R-0044, including subfactors to be considered, their weighting and the adjectival methodology, was the same as that for the "experience/past performance" factor under the instant Solicitation, as can be confirmed by comparison of Woznick Decl., Ex. 1, at 61, 66, 67-68, and 70-71 with Woznick Decl., Ex. 10. The contract under solicitation SP0100-06-R-0044 was awarded to a competitor on February 23, 2007. Wolverine requested and received a post-award debriefing on March 1, 2007, which was conducted by Mr. Darcy of DSCP. Vugteveen Decl. ¶ 3

**REDACTED COPY**

& Ex. 12. [redacted].[14] Vugteveen Decl., Ex. 12. [redacted][15] Vugteveen Decl., Ex. 11, at 327. DSCP's evaluation for solicitation SP0100-06-R-0044 strongly suggests that in the instant procurement DSCP misscored Wolverine's proposal, to Wolverine's detriment, with respect to the "experience" subfactor and the "delivery performance" component of the "quality of items/delivery performance" subfactor under the instant Solicitation. [redacted] *See* Woznick Decl., Ex. 7, at 183, 186.

The above discussed instances of misevaluation led to lower than justifiable subfactor scores that in turn led to lower than justifiable factor scores. More specifically, [redacted]

---

[14] [redacted].

[15] [redacted]

**REDACTED COPY**

[redacted].[16] These corrected factor scores, when considered with the balance of the technical evaluation, further underscore that there is no reasonable basis to support elimination of Wolverine from the competitive range.

**ABSENT RELIEF, WOLVERINE WILL SUFFER IRREPARABLE HARM**

Wolverine was an actual bidder for the instant procurement and has a direct economic interest therein. Moreover, as described in detail above, the errors in the procurement evaluation process have resulted in material prejudice to Wolverine. But for these errors, Wolverine has a

[16] DSCP did not assign a weighting to the two components of the "quality of items/delivery performance" subfactor. Hence, they should be weighed equally. *Bean Stuyvesant, L.L.C. v. United States*, 48 Fed. Cl. 303, 321 (2000); *Isratex, Inc. v. United States*, 25 Cl. Ct. 223, 229 (1992).

**REDACTED COPY**

substantial chance of receiving a contract award. As this Court has observed, a state of "verbal gymnastics" exists surrounding the substantial chance test, because bid protests arise in many different procurement contexts. *Information Sciences Corp. v. United States*, 73 Fed. Cl. 70, 93 (2006). The present context, determination of a competitive range, is a circumstance in which prejudice is readily found. *See Cubic Defense Systems, Inc. v. United States*, 45 Fed. Cl. 450, 460-61 (1999) ("It goes against principles of government contracting to exclude prematurely from competition an offeror whose proposal has a reasonable chance of being selected. Federal acquisition policy favors inclusion of such a bidder within the competitive range in the early stages of a procurement."). *See also Myers Investigative & Security Services, Inc. v. United States*, 275 F.3d 1366, 1370 (Fed. Cir. 2002); *Alfa Laval Separation, Inc. v. United States*, 175 F.3d 1365, 1367 (Fed. Cir. 1999).

That being said, the question arises whether there is an adequate remedy in the absence of injunctive relief. Here there is no adequate remedy at law available to Wolverine. Failure to issue a temporary restraining order, and subsequently a preliminary injunction, will result in severe competitive disadvantage to Wolverine. In these circumstances, there can be no doubt that Wolverine will suffer irreparable harm if injunctive relief is not awarded. "It is well settled that a party suffers irreparable injury when it loses the opportunity to compete on a level playing field with other bidders." *Cardinal Maintenance Service, Inc. v. United States*, 63 Fed. C. 98, 110 (2004) (citing *Hunt Building Co., Ltd. v. United States*, 61 Fed. Cl. 243, 280 (2004)). *See also PGBA, LLC v. United States*, 57 Fed. Cl. 655, 664 (2003); *United Payors & United Providers Health Servs., Inc. v. United States*, 55 Fed Cl. 323, 333 (2003) ("[L]ost opportunity to compete on a level playing field for a contract has been found sufficient to prove irreparable harm.") (citing *United Int'l Investigative Servs., Inc. v. United States*, 41 Fed. Cl. 312, 323

REDACTED COPY

(1998)); *Overstreet Elec. Co. v. United States*, 47 Fed. Cl. 728, 744 (2000). "Irreparable injury includes, but is not limited to, lost profits which would flow from the contract." *Cardinal Maintenance*, 63 Fed. Cl. at 110 (citing *SAI Industries v. United States*, 60 Fed. Cl. 731, 747 (2004)). *See also Labat-Anderson Inc. v. United States*, 50 Fed. Cl. 99, 110 (2001). Lost profits cannot be adequately compensated at law in this Court under section 1491(b); hence, a plaintiff is irreparably harmed because it can recover only bid preparation costs. *See Norfolk Dredging Co. v. United States*, 58 Fed. Cl. 741, 758-59 (2003); *Seattle Security Services, Inc. v. United States*, 45 Fed. Cl. 560, 571 (2000).

### THE BALANCE OF HARDSHIP TIPS IN WOLVERINE'S FAVOR

Wolverine is fully aware that in adjudging the balance of hardships this Court is to "give due regard to the interests of national defense and national security." 28 U.S.C. § 1491(b)(3). In the present instance, those interests can be accommodated while at the same time providing injunctive relief to Wolverine. Foremost, as the Solicitation makes clear, there are to be five awards made, three of which are to go to small business. Wolverine does not seek injunctive relief with respect to the three awards to be made to small business. Consequently, there will be no disruption whatsoever in the procurement process with respect to the quantities of boots covered by those three awards, which amount to 47% of the total maximum quantity being procured (base year plus all four option years). Second, during the pendency of this proceeding, DSCP may continue to utilize existing boot contracts[17] through means of modifications extending them and/or use short term sole source purchase orders to acquire whatever additional

[17] These contracts, which the instant Solicitation is intended to replace, are Contract SP0100-03-D-0371 (McRae Industries, Inc.), Contract SP0100-03-D-0372 (Wellco Enterprises, Inc.), Contract SP0100-03-D-0373 (Altama Delta Corporation), and Contract SP0100-03-D-0374 (Belleville Shoe Manufacturing).

REDACTED COPY

quantities it may need. *See Keeton Corrections, Inc. v. United States*, 59 Fed. Cl. 753, 758-59 (2004), *discussing with approval Unified Industries, Inc.*, B-241010, Dec. 19, 1990, 1990 WL 293799, 70 Comp. Gen. 142, 145, 91-1 CPD ¶ 11; *Master Security, Inc.*, B-274990, Jan. 14, 1997, 1997 WL 11254, at *6, 97-1 CPD ¶ 21; *Mas-Hamilton Group, Inc.*, B-249049, Oct. 20, 1992, 1992 WL 328756, 72 Comp. Gen. 6, 11, 92-2 CPD ¶ 259.

Allegations of national defense and security "must be evaluated with the same analytical rigor as other allegations of potential harm to parties or to the public." *OTI America, Inc. v. United States*, 68 Fed. Cl. 646, 660 (2005); *Filtration Development Co., LLC v. United States*, 60 Fed. Cl. 371, 385 (2004). Therefore, on the present facts, Wolverine submits that the balance of hardships tips in its favor, because DSCP has available multiple avenues of supply for whatever quantities of boots it may require during the period necessary for resolution of this proceeding.

**GRANTING WOLVERINE THE RELIEF REQUESTED WILL SERVE THE PUBLIC INTEREST**

Granting Wolverine injunctive relief will further the public interest. "It is well established that there is an overriding public interest in preserving the integrity of the federal procurement process by requiring government officials to follow procurement statutes and regulations." *CW Government Travel v. United States*, 61 Fed. Cl. 559, 576 (2004) (citing *United International Investigative Services, Inc. v. United States*, 41 Fed. Cl. 312, 323 (1998)). Moreover, "the public interest is served by enforcing a procurement process that conforms with . . . the solicitation's evaluation criteria." *Cardinal Maintenance Service, Inc. v. United States*, 63 Fed. Cl. 98, 111 (2004) (citing *Al Ghanim Combined Group Co. v. United States*, 56 Fed. Cl. 502, 521 (2003)). *See also PGBA, LLC v. United States*, 57 Fed. Cl. 655, 663 (2003) ("Clearly, the public interest in honest, open, and fair competition in the procurement process is compromised whenever an agency abuses its discretion in evaluating a contractor's bid.").

**REDACTED COPY**

WHEREFORE, for the reasons stated above, Wolverine World Wide, Inc. respectfully requests that the Court grant its motion for a temporary restraining order and/or a preliminary injunction pending the Court's decision on the merits of Plaintiff's Complaint.

Respectfully submitted,

s/ Philip A. Nacke
Philip A. Nacke
FOLEY & LARDNER LLP
3000 K Street, N.W., Suite 500
Washington, D.C. 20007-5143
Telephone 202.295.4086
Facsimile 202.672.5399

*Counsel of Record for Plaintiff Wolverine World Wide, Inc.*

OF COUNSEL:
David T. Ralston, Jr.
Steven C. Lambert
FOLEY & LARDNER LLP
3000 K Street, N.W., Suite 500
Washington, D.C. 20007-5143
Telephone 202.672.5300
Facsimile 202.672.5399

Dated May 2, 2007